Fitzpatrick v. Thomas.

S. W. FITZPATRICK v. JAMES H. THOMAS et al.

DECREE. *Construction of.* F., a special commissioner, acting under a consent decree, divided a tract of land into four parcels, and sold them. W. and H. bought one of the parcels, Lot No. 1, containing 294 acres, paying ten per cent. of the purchase money and giving their notes with a lien on the land for the balance. This sale was confirmed by the court. The commissioner subsequently made a second report, substantially the same as the first, which was also confirmed. The decree then sets out the fact that W. and H. had sold to F. a part of tract No. 1, which being assented to is confirmed, and adds, "it is ordered and adjudged that the said several tracts, so sold and purchased by said several purchasers, and said lot purchased by W. and H., and the part thereof assigned to F., and all the title thereto of the several parties to these suits be divested out of said parties and be vested in the purchasers and assignee as aforesaid severally, but a lien is retained upon each of said tracts for the original purchase money to be paid for said several tracts." *Held,* that under this decree the land purchased by F., was liable only for the price agreed to be paid for it, and not liable for any balance due on the remainder of Lot No. 1.

FROM MAURY.

Appeal from the Chancery Court at Columbia. W. S. FLEMING, Ch.

McDowell & Webster for complainant.

Barnett & Hughes for defendants.

Cooke, J., delivered the opinion of the court.

In 1869, James H. Thomas was, by an agreed decree by the consent of all the parties in interest, appointed a special commissioner in the above entitled cause, to sell a large and valuable tract of land, his action in the premises to be subject to the approval of the court. He was permitted by said decree to divide said tract into separate parcels, as he might deem best. He accordingly did divide it into four separate lots or parcels, and sold the same to separate purchasers, Walter and Hugh Akin becoming the purchasers of one of these, designated as Lot No. 1, containing 294 acres, at the price of fifty-six dollars per acre. Ten per cent. of the purchase money was paid down and the notes of the purchasers taken for the residue, payable in one and two years respectively, a lien being retained upon the land for the unpaid purchase money.

This sale, together with that of the other lots, was made on December 6, 1869, and was reported to the court and confirmed by decree of the chancellor on April 14, 1870, the title being divested out of all the other parties and vested in the purchasers, subject to the lien for purchase money. Notwithstanding the confirmation of this report, it seems that he subsequently made another report of said sale, substantially the same as the first, except it contained

the report of the surveyor who divided the land into lots, and which he dated as of the same date of his first report, and then made a supplemental report showing the collection and disbursement by him of certain monies by consent of the beneficiaries. This second report and supplemental report were also confirmed, by a decree of the court, February 14, 1871, there being no exceptions to the same. After which the decree proceeds as follows: "And it appearing to the court, that said Walter and Hugh Akin have sold and transferred to the said Samuel W. Fitzpatrick a part of said Lot No. 1, all of which fully appears from the report of O. H. P. Bennett, the surveyor employed by said parties, etc. (which is set out and shows that he surveyed and laid off by metes and bounds 144 acres of said Lot No. 1), and the decree then proceeds:

"Walter Akin sold this to S. W. Fitzpatrick. And from the endorsement of said Walter and Hugh Akin endorsed thereon, which is in the words and figures following, to-wit: To the Hon. W. S. Fleming, chancellor: The within are the boundaries of a part of the land purchased by me at the sale of the lands of G. W. Polk, by James H. Thomas, trustee, etc., being Lot No. 1 of said sale. I have sold the within part thereof to S. W. Fitzpatrick, and he has paid me for the same, and I hereby request said court to make, or cause title to be made therefor, to said Fitzpatrick, January, 1871. WALTER and HUGH AKIN."

"And it being admitted by the parties that said agreement and assignment between said Walter and Hugh Akin on the one part, and said S. W. Fitzpatrick, is correct as made and assented to, it is ordered that the same be confirmed. And it is ordered, adjudged and decreed by the court, that the said several tracts of lands so sold as aforesaid, and pur-

Fitzpatrick *v.* Thomas.

chased by said several purchasers as aforesaid, and said part of said lot of land purchased by said Walter and Hugh Akin as aforesaid, and the part thereof assigned to said Fitzpatrick as aforesaid, and all the title thereto of the several parties to these suits, be and the same is hereby divested out of said parties severally, and the same is hereby vested in the several purchasers and the assignee as aforesaid severally, and their heirs and assigns severally forever; but a lien is retained upon each of said several tracts of land for the original purchase money to be paid for said several tracts."

Akins failed to pay the second note executed by them for the purchase money of Lot No. 1, or the greater portion of it, and judgment by motion was taken against them upon it in 1874. Thomas, the special commissioner, died in 1876. The clerk and master was appointed special commissioner in his stead, and said judgment against said Akins revived in his name as such. The portion of said Lot No. 1 retained by the Akins, 150 acres, has been sold to satisfy the same, and failed to bring enough to discharge the judgment, leaving several thousand dollars of the same unsatisfied. In 1877, Fitzpatrick filed a petition in this cause by which he alleges. that on March 2, 1870, after the sale had been made of Lot No. 1 by Thomas as commissioner to the Akins, but before the same had been reported to the court or the sale confirmed, he made a contract or agreement with said Akins and Thomas, by which he agreed to take said 144 acres of the land purchased by Akins at the

price of sixty dollars per acre, and to pay Thomas
that price for the same; and that Thomas was to
report the same to the court as a sale of so much
of said land to him, and to procure the title to be
decreed to him, free from any lien for purchase money,
except the amount he had agreed to pay for the
same; that he paid to Thomas $3,100 of said pur-
chase money in cash, and transferred to him a note
on one Akin and Larkin for the residue; That
Thomas had credited the $3,100 paid by him upon
Akins' note for the purchase money, and that he had
collected and applied all of the Akin and Larkin
note transferred by him in the same way, which had
been credited upon Akins' purchase money notes, ex-
cept a small balance of about fifty or sixty dollars,
and which had discharged all of the purchase money
he was to pay for said 144 acres except that amount,
and which he tenders with his petition, and avers
that he is entitled to a deed or decree to said land,
free from any further lien for purchase money. Says
he understood and believed the same had been so
done, in accordance with his agreement with Thomas,
and which he had promised to have done, but that
he has recently learned that it is claimed that a lien
still exists upon said 144 acres purchased by him,
under the decree of April 14, 1870, and that the
same was not severed and released by that of Feb-
ruary 14, 1871. He insists, however, that it was,
and under said last named decree said land purchased
by him was discharged of any lien, except for the
purchase money which he was to pay, and asks that

said decree be construed, and if it shall turn out that said lien was so discharged, he avers that the failure to have the same done by said Thomas was a fraud upon his rights; that the respondents have had the benefit of the purchase money paid by him; that as said land was sold under a contractual decree he is entitled to have the same corrected or his contract rescinded and his purchase money refunded, and a lien declared and enforced upon said land for the same. It is agreed in the record that the petition may be taken and considered either as a bill or petition, whichever may be necessary to obtain the ends of justice upon the case made under it. The answer denies the material allegations. The oral testimony, if competent, sustains the allegations of the petition. The only question for determination is, does a lien exist upon the 144 acres purchased by Fitzpatrick in favor of the special commissioner for the purchase money due from Akins upon the original purchase of said Lot No. 1? The chancellor held that the original lien retained upon said lot was severed by the decree of February 14, 1871, and that Fitzpatrick took the 144 acres discharged of any other lien except that for the purchase money which he undertook to pay and has paid, and that the same is not subject to the satisfaction of the judgment against Walter and Hugh Akin. The Referees have reported that his decree should be affirmed. Although the question is not by any means free from difficulty, we are inclined to concur in their conclusion. While some of the recitals of the record indicate that the pur-

·chase was made by Fitzpatrick from Walter and Hugh Akin, and that the payment for the same was made to them, yet there is no doubt but that the $3,100 of cash paid by Fitzpatrick was received by Thomas and by him credited upon the Akins' note, and that the note upon Akin and Larkin, by which the residue of his purchase money was discharged, was turned over by him to Thomas, and by him collected, and the proceeds also applied as a credit upon said Akins' notes. If we look to the parol testimony, this is shown to have been done almost immediately after the original sale to Akins, and before it was reported or confirmed. The land sold to Fitzpatrick was unimproved land, while that retained by Akins was improved. There is nothing to show that there was any difference in the quality of the land. Fitzpatrick took it at an advanced price, paying sixty dollars per acre for it. It is fairly deducible from the record, as we think, that this portion of the land discharged more than its ratable proportion of the original lien, and there was no reason why it should not have been segregated and discharged from that remaining upon the other portion, and it is not reasonable or probable that a purchaser would pay this large price of over $8,000 for this portion of said land, which was its full value, and take it incumbered with a lien for a still greater amount. We ·can see that the proceedings were inartificial and loosely conducted. When we come to read and construe the decree of February 14, 1871, above recited, in the light of these circumstances, we think the statement

in said decree, "and it being admitted by the parties that said agreement and assignment between said Walter and Hugh Akin on the one part and S. W. Fitzpatrick is correct as made and assented to," was the admission and assent of all the parties in interest in said cause, and that the language of the decree, after the divesting and vesting title, "but a lien is retained upon each of said several tracts of land for the original purchase money to be paid for said several tracts," has reference to each of the tracts specified in said decree, and as this 144 acres purchased by Fitzpatrick was one of these tracts specifically set out and described, the lien retained upon it was simply for the purchase money due from Fitzpatrick upon his purchase of it, and that this was a virtual modification of the former decree, to that extent, by the assent of the parties.

We have no doubt, from all the facts and circumstances in the case, that such was the intent and understanding of the parties, and we think the language will bear that construction, and are better content to so hold as we are satisfied the justice and equity of the case have been reached. If this were not so, we should be strongly inclined to hold, that under the facts and circumstances developed by this record, the petitioner would be entitled to relief on account of the mistake or fraud of said commissioner in failing to report the transaction as it occurred, and to have the same corrected or his purchase money restored; but how this would be we have deemed, in the view we have taken of the case, unnecessary to determine.

Fitzpatrick *v.* Thomas.

Upon the whole case we are satisfied with the conclusions reached by the chancellor and Referees, and confirm the report and affirm the chancellor's decree with costs, which will be paid out of the funds in the hands of the commissioner or in court, if there be any, and if not, by the beneficiaries in the sale of said land.